UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Tyler Williams, Kenneth Hidalgo, Jonte Benjamin, and Shakeem Trace, *on behalf of themselves and all others similarly situated*,<br><br>        *Plaintiffs*,<br><br>  -against-<br><br>Blue Chip Pros Security LLC,<br><br>        *Defendant*. | Case No. 7:22-cv-06353<br><br>**RULE 23 CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

  Plaintiffs Tyler Williams ("Williams"), Kenneth Hidalgo ("Hidalgo"), Jonte Benjamin ("Benjamin"), and Shakeem Trace ("Trace" and, together with Williams, Hidalgo, and Benjamin, the "Plaintiffs"), individually and on behalf of all others similarly situated employed by Defendant Blue Chip Pros Security LLC as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

  1.  Plaintiffs and a proposed class of similarly situated persons worked for Defendant at worksites located throughout Westchester County and in the State of New York, performing almost entirely physical labor, and being paid bi-weekly in violation of NYLL 191.

  2.  Defendants also failed to pay Plaintiffs and the proposed class statutorily required 'Call-in Pay' of four hours on days when they reported to their assigned worksites but were sent home for weather and other reasons, in violation of 12 NYCRR 142-2.3.

  3.  Plaintiffs and a proposed class were required to use their personal vehicles to drive to and from worksites (incurring gas and toll charges, and wear-and-tear on their vehicles) and purchase their own required safety equipment.  Defendants did not fully reimburse Plaintiffs for these expenses causing the Plaintiff's to earn less than the statutory minimum for all hours worked, and therefore the failure to reimburse for these expenses constituted illegal pay deductions from the paychecks of every member of the proposed class 12 NYCRR 142-2.10.

1

## THE PARTIES

4. Plaintiff Williams was, at all relevant times, an adult individual residing in Westchester County, New York.

5. Plaintiff Hidalgo was, at all relevant times, an adult individual residing in Bronx County, New York.

6. Plaintiff Benjamin was, at all relevant times, an adult individual residing in Bronx County, New York.

7. Plaintiff Trace was, at all relevant times, an adult individual residing in Westchester County, New York.

8. Throughout the relevant time period, Plaintiffs performed work for Defendants at worksites located throughout Westchester County, NY.

9. Defendant Blue Chip Pros Security LLC, the entity on Plaintiffs' pay stubs, has no entry in the Department of the State of New York's Division of Corporations, and the company's address listed on paystubs given to employees including Plaintiffs is 7250 Edington Drive, Cincinnati, Ohio 45249.

## JURISDICTION AND VENUE

10. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendant in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiffs and the members of the proposed class are citizens of states different from that of Defendant.

11. This court also has diversity jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a)(1) and (c)(1). There is complete diversity of citizenship between the

opposing parties since the Plaintiffs reside in New York State and are citizens of that state, while Defendants are citizens of Ohio with its principal place of business located at 7250 Edington Drive, Cincinnati, Ohio 45249, pursuant to § 1332(c)(1).

12. There are over 100 members in the proposed class.

13. Defendants are subject to personal jurisdiction in New York as they do business in New York.

14. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant conducts business in this District.

## FACTS

15. Upon information and belief, Defendant entered into contracts as prime contractor or subcontractors to provide facility management, commercial cleaning, security services, and traffic control and flagging services in the State of New York.

16. Plaintiffs and other members of the proposed class performed physical tasks, including cleaning, holding stop/go signs, directing pedestrian and vehicular traffic around construction sites, placing signs around the construction site, positioning safety barriers, cones and caution tape to permit movement of construction equipment, ensuring that no pedestrians were near construction vehicles, closing street intersections and escorting construction vehicles, including backhoes, cutters and dump trucks, as they moved in and out of the construction site to ensure safe passage.

17. **Plaintiff Williams's** employment period is from on or about January 9, 2022, to the present.

18. During the employment, he worked an average of 40 hours per week, occasionally working more than 40 hours.

19. His regular rate is $17 per hour.

20. Defendant paid Williams bi-weekly.

21. He was responsible for controlling traffic at an active worksite and there was no one present to relieve him of his post in order to allow him to take lunch.

22. His assigned duties had him on his feet for the entire shift, signaling and flagging to direct traffic and the movement of pedestrians, and vehicles.

23. On days when Williams reported to Con Ed job sites to work, but the weather did not allow for work to begin or continue that day and he was sent home, Williams was not paid the required Call in Pay of four hours for that day. Defendants instead paid only two hours on those days when it had to send its flaggers home for weather reasons. Williams was sent home from his worksites at least ten times during his approximate six months of employment.

24. Throughout his employment, Williams was required to use his own vehicle to get to job sites. Williams was only reimbursed at $.50 per mile for travel between job sites if he worked at more than one job site in a given day. This reimbursement rate was below the required reimbursement rate based on mileage.

25. Defendant required Williams wear a uniform consisting of work pants, hard hat, vest, boots, and safety glasses on job sites. Defendant provided a hard hat and vest; Williams paid $150 for the rest and was never reimbursed.

26. **<u>Plaintiff Hidalgo's</u>** employment period is from on or about January 2022 to the present.

27. At all times relevant, Hidalgo worked 32-38 hours per week and earned $17 per hour.

28. At all times relevant, Defendants have paid Hidalgo bi-weekly.

29. Hidalgo's assigned duties had him standing on his feet 8-10 hours per day

while directing and controlling traffic, as well as cleaning worksites, and moving equipment and other items around worksites.

30. Hidalgo has complained to supervisors employed by Defendants about his pay, one of whom replied "Well, that is just how the company is run, and everyone is paid like this."

31. Defendants require Hidalgo to use his own car to travel to and from worksites. He was reimbursed at $.50 per mile for this travel. This reimbursement rate was below the required reimbursement rate based on mileage.

32. Defendants required Hidalgo to wear specific work clothes while working on Con Ed job sites. Defendants provided him a hard hat and safety vest, but also required Hidalgo to wear work boots and safety goggles. Hidalgo spent $400 on work boots, two sets of work pants, a second safety vest, and work goggles. Defendants never reimbursed Hidalgo for these out-of-pocket costs.

33. Defendants have only paid Hidalgo for two hours of Call In Pay, rather than the required four hours, for days when Hidalgo reports to his assigned work site, but weather prohibits Con Ed from performing work that day.

34. For example, on June 16, 2022, Hidalgo reported to his assigned Con Ed work site, but was sent home because it was raining and was only paid 2 hours of Call-in pay instead of 4.

35. Defendants' untimely payment of wages injured Hidalgo by impairing his ability to save and invest and robbed him of the time value of his wages.

36. Defendants' untimely wage payments also injured Hidalgo by impairing his ability to pay his regular bills and expenses in a timely manner. For example, in the seven months of Hidalgo's employment with Defendants, he has paid his share of the rent late on at least one occasion, had to make a late car payment, and at least one credit card bill late. Before

5

his employment with Defendants and being paid bi-weekly, Hidalgo was in the habit of making weekly credit card payments and has fallen behind with his payments as a result of Defendants' untimely wage payments.

37. **Plaintiff Benjamin's** employment period is from in or about December 2021 to the present.

38. Benjamin works 32-38 hours per week earning $17 per hour.

39. At all times relevant, Defendants have paid Benjamin bi-weekly.

40. Benjamin stands on his feet for 8-10 hours per day while working for Defendants doing traffic control, moving equipment and other items, and cleaning throughout Westchester County.

41. Defendants require Benjamin to use his own car to travel to and from worksites and have only reimbursed Benjamin at a rate of $.50 per mile for said travel. This reimbursement rate was below the required reimbursement rate based on mileage.

42. On days when Benjamin reports to his assigned work site, but Defendants send him home because Con Ed due to weather reasons, Benjamin is only paid for two hours of Call in Pay rather than the required four hours of Call in Pay.

43. Defendants required Benjamin to wear a uniform including a hard hat and safety vest they provided, and work boots and safety googles Benjamin was forced to spend $350-400 out of his own pocket.

44. Defendants' late wage payments injured Benjamin by costing him the time value of his earned wages and impairing his ability to save and invest.

45. Defendants' untimely wage payments impaired Benjamin's ability to pay his weekly expenses, including his rent, car insurance, phone bills and school tuition payments. Benjamin has missed several credit card payments as a result of Defendants' late wage

payments.

46. Benjamin was also paid an additional two weeks late for a specific pay period that included a day during which he worked 16 hours at an overtime wage rate. Upon receiving his paycheck and realizing it appeared to be short over $100, Hidalgo reached out to Defendants' human resources department to request that Defendants issue him a second paycheck. Defendants' HR department acknowledged the error but forced Benjamin to wait an additional two weeks to receive the full amount of his earned wages.

47. **Plaintiff Trace's** employment period is from in or about December 2021 to the present.

48. Trace works 32-40 hours per week earning $17 per hour.

49. At all times relevant, Defendant has paid Trace bi-weekly.

50. Trace stands on his feet for 8-10 hours per day while working for Defendant performing flagging work on public streets, roadways and sidewalks throughout Westchester County.

51. Defendant requires Trace to use his own car to travel to and from worksites and has received no reimbursement or other compensation for travel expenses. This reimbursement rate was below the required reimbursement rate based on mileage.

52. On days when Trace reported to his assigned worksite, but Defendants sent Trace home for weather reasons, Trace was only paid two hours for Call in Pay, not the required four hours.

53. Defendants required Trace to wear specific safety equipment and provided him with a hard hat and safety vest. Trace was forced to spend $100 out of his own pocket to buy work boots. Defendants never reimbursed Trace for this expense.

54. Defendants' untimely wage payments injured Trace by costing him the time

value of his earned wages by impairing his ability to save and invest. Defendants' late wage payments also damaged Trace's ability to pay his regular expenses and bills. For example, Trace was forced to make late car insurance payments approximately six times, pay his rent late approximately six times, and also made late credit card payments as a result of Defendants' untimely payment of Trace's earned wages.

## RULE 23 CLASS ACTION ALLEGATIONS

55. The Proposed Class is defined as:

> All persons employed in a non-exempt position by Defendant in New York at any time six years prior to the filling of this Complaint through the entry of judgment in this case.

56. The members of the Proposed Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

57. There are more than 100 class members and Plaintiffs' claims are typical of those other members, in that any one would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment.

58. Plaintiffs and the Proposed Class have all been injured in that they have been uncompensated and untimely compensated due to Defendants' common policies, practices, and patterns of conduct, including paying their New York non-exempt employees on a bi-weekly basis instead of weekly basis; paying two hours of call-in pay instead of four; and reimbursing mileage at $0.50 which was below the required reimbursement rate based on mileage.

59. Defendants' corporate-wide policies and practices affected every non-exempt employee who worked in New York in the same way.

60. Plaintiffs are able to fairly and adequately protect the interests of the Proposed Class and have no interests antagonistic to it.

61. Indeed, Plaintiffs have advocated for employee rights, and fairness and equity in the workplace, including requesting higher pay, weekly payments, and reimbursement for travel expenses.

62. Plaintiffs are represented by attorneys who are experienced and competent to bring this action.

63. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

64. Common questions of law and fact exist as to the Proposed Class that predominate over any questions only affecting Plaintiffs and/or each member of the New York Class individually and include, but are not limited to, the following:

   a. What were Proposed Class Members' job duties and do they qualify as Manual Workers under the NYLL?

   b. At what frequency did Defendants pay members of the Proposed Class?

   c. Were members of the Proposed Class underpaid as a result of Defendants corporate policies, including, but not limited to failure to pay Call in Pay and properly reimburse them for the costs of required safety equipment and the costs of being forced to use their own vehicles to travel to worksites?

# CAUSES OF ACTION

### Count 1: New York Labor Law – Failure to Pay Timely Wages
### (Brought on behalf of Plaintiffs and Proposed Class)

65. The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiffs and the Proposed Class.

66. Defendants failed to pay Plaintiffs and the Proposed Class on a timely basis as required by NYLL § 191(1)(a), which resulted in an underpayment.

67. Manual Workers, as contemplated by NYLL § 191, are "dependent upon their wages for sustenance." People v. Vetri, 309 N.Y. 401, 405 (1955).

68. All of the Defendants' flaggers are Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

69. As such, the failure to provide wages owed to Plaintiffs and all others similarly situated Manual Workers, according to NYLL § 191, constitutes an "especially acute injury." See Caul v. Petco Animal Supplies, Inc., No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing Vega v. CM & Associates. Contr. Mgmt., LLC, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019)).

70. Defendants' conduct also constitutes an "injury in fact" suffered by Plaintiffs under Article III that is within the federal judicial power because Plaintiffs have "suffered an injury in fact that is concrete, particularized, and actual or imminent." See Caul v. Petco (infra).

71. Plaintiffs have suffered numerous financial consequences and injuries as a result of being paid bi-weekly including having to pay their rents late, missing credit card payments, and paying car insurance late.

72. Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants the amount of the underpayments caused by their

untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

**Count II: New York Labor Law - Defendants Did Not Pay Plaintiffs Their Call In Pay as Required by N.Y. Comp. Codes R.& Regs**

73. New York requires that employers pay a minimum of four hours when they report to worksites on their regularly scheduled shifts, but are sent home for weather or other reasons:

74. Throughout their respective employment periods, Plaintiffs were only paid for two hours on the days when they reported for their scheduled work shifts, but were sent home for weather or other reasons.

75. Plaintiffs and the New York Class should have been paid for at least four hours on those days in accordance with 12 NYCRR 142-2.3, entitled them to recover maximum compensation for those unpaid hours, including unpaid wages, liquidated damages thereon, prejudgment interest, and attorneys' fees and expenses.

**Count III: Defendants Did Not Reimburse Plaintiffs for Necessary Expenses**

76. Throughout their respective employment periods, Plaintiffs and other flaggers who drove their personal vehicles to and from Con Ed job sites, were required to pay for gas and tolls incurred while driving between Con Ed job sites, in addition to regular maintenance costs. Despite the fact that the Defendants required construction flaggers who owned cars to use their personal vehicles, Plaintiffs were never reimbursed for these costs. Plaintiffs were also required to wear safety goggles and steel-toed boots, but were never reimbursed for these items.

77. Plaintiff Williams, for example, reported receiving a safety vest and a hard hat to wear from Defendants, but was forced to purchase steel-toed work boots, safety goggles and work overalls at a total cost of $150. By requiring Plaintiffs to purchase and wear these items,

Defendants effectively took an illegal deduction from the first paycheck of every member of the Proposed Class of flaggers.

78. New York State reimburses employees for business use of privately owned automobiles based on the standard mileage allowance established by the Internal Revenue Service ("IRS"). According to the IRS guidelines, and the fact that Plaintiffs were required to use their own vehicles to travel to and from worksites, Plaintiff should have been reimbursed by who $0.56 in 2021 and $0.585 in 2022. This reimbursement is especially relevant today as the country experiences record gas prices and due to the fact that Defendants are paying their flaggers barely above the area's minimum wage.

79. By failing to reimburse the expenses as required, Defendants paid Plaintiffs and the proposed class below the statutory minimum for all hours worked, entitling them to recover an award of unpaid wages, liquidated damages thereon, prejudgment interest, and attorneys' fees and expenses.

**Count IV Failure to Provide a Wage Notice and Wage Statement as Required by the New York Wage Theft Prevention Act**

80. Plaintiffs incorporate by reference the allegations in the prior paragraphs of this Complaint.

81. In violation of the New York Labor Law, N.Y. Lab. Law § 195(1)(a), Defendant failed to provide its employees, at the time of hiring, notice of the rate or rates of pay.

82. Defendant is an employer under Article 6 of the New York Labor Law.

83. Plaintiffs are employees of Defendant under Article 6 of the New York Labor Law.

84. At the time Defendant hired Plaintiffs and members of the Notice and Pay Statement Class, Defendant did not provide them notice of the rate or rates of pay for call-in pay

or notice that their regular hourly wages may be prorated or reduced to a different hourly rate to make up for call-in pay.

85. In accordance with N.Y. Lab. Law § 198(1-b), if an employee does not receive notice of the rate or rates of pay under § 195(1)(a) within ten business days of hiring, the employee may recover up to $50 for each workday that violations occur or continue to occur, up to $5,000 plus reasonable costs and attorney fees.

86. Within ten business days of hiring Plaintiffs and continuously thereafter, Defendant failed to provide notice of the rate or rates of pay they would receive for call-in pay.

87. Based on the foregoing, Plaintiffs and the Notice and Pay Statement Class demand judgment against Whole Foods for damages in an amount to be determined at trial and all other appropriate relief.

88. In violation of the New York Labor Law, N.Y. Lab. Law § 195(3), Defendant failed to provide its employees with pay statements that accurately set forth the rate or rates of pay, the basis for those rates, or the number of regular hours worked.

89. Defendant is an employer under Article 6 of the New York Labor Law.

90. Plaintiffs are employees of Defendant under Article 6 of the New York Labor Law.

91. Plaintiffs are not exempt employees under the minimum wage orders issued by the Commissioner for the New York Department of Labor.

92. For pay periods that included days where Plaintiffs and Members of the Notice and Pay Statement Class were eligible for call-in pay, Defendant issued pay statements to Plaintiffs that did not accurately set forth the rate or rates of pay, the basis for those rates, or the regular number of hours worked. In particular, the pay statements did not accurately state the rate or hours for call-in pay.

93. In accordance with N.Y. Lab. Law § 198(1-d), if an employee is not provided with the statements required by § 195(3), the employee shall recover $250 for each workday that violations occur or continue to occur, up to $5,000 plus reasonable costs and attorney fees.

94. Based on the foregoing, Plaintiffs and the Call-in Class demand judgment against Defendant for damages in an amount to be determined at trial and all other appropriate relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure

B. Designation of Plaintiff Jonas as representative of the New York Rule 23 Class and counsel of record as Class Counsel;

C. Damages for Unpaid Wages in an amount to be determined at trial;

D. Compensatory damages in an amount to be determined at trial;

E. Liquidated damages permitted by law pursuant to the NYLL;

F. Prejudgment and post-judgment interest;

G. Reasonable attorneys' fees and costs of the action;

H. All other damages and relief authorized by statute or law, including but not limited to punitive or liquidated damages, costs and attorney fees, and prejudgment interest.

I. Injunctive and Declaratory Relief;

J. Such other relief as this Court shall deem just and proper.

## JURY DEMAND

Pursuant to FRCP 38 Plaintiff demands trial by jury on all issues.

Dated: New York, New York
      July 26, 2022

**LAW OFFICE OF MOHAMMED GANGAT**

By: _/s/ Mohammed Gangat_
Mohammed Gangat, Esq.
675 Third Avenue
Suite 1810
(718) 669-0714
mgangat@gangatllc.com

*Attorneys for Plaintiffs and Proposed Classes*